```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                          SOUTHERN DIVISION

  UNITED STATES OF AMERICA,

                     Plaintiff,        Case No. 14-30120
     -v-

  MOHAMMAD HASSAN HAMDAN,

                     Defendant.
  _____/

               CONTINUATION OF DETENTION HEARING

          BEFORE THE HONORABLE R. STEVEN WHALEN
          United States Executive Magistrate Judge
          Theodore Levin United States Courthouse
                231 West Lafayette Boulevard
                      Detroit, Michigan
                      March 31, 2014

  APPEARANCES:

  FOR THE PLAINTIFF:    RONALD W. WATERSTREET
                        U.S. Attorney's Office
                        211 W. Fort Street
                        Suite 2001
                        Detroit, MI 48226

  FOR THE DEFENDANT:    ARTHUR J. WEISS
                        30445 Northwestern Highway
                        Suite 330
                        Farmington Hills, MI 48334-3102


             To Obtain a Certified Transcript Contact:
   Christin E. Russell, RMR, CRR, FCRR, CSR - (248) 420-2720
           Proceedings produced by mechanical stenography.
      Transcript produced by computer-aided Transcription.
```

## TABLE OF CONTENTS

| Hearing | Page |
|---|---|
| Ruling of The Court | 3 |

Exhibits:
    (None Offered.)

| | |
|---|---|
| CERTIFICATE OF REPORTER | 16 |

1   Detroit, Michigan

2   March 31, 2014

3   1:20 p.m.

4         (Call to Order of the Court; all parties present.)

5         THE CLERK:  The Court now calls case No. 14-30120.

6   United States of America vs. Mohammad Hamdan.

7         THE COURT:  Appearances for the record, please?

8         MR. WATERSTREET:  Good afternoon, your Honor.  Ronald

9   Waterstreet appearing on behalf of the United States.

10        MR. WEISS:  Good afternoon, your Honor.  May it please

11  the Court, Arthur Weiss on behalf of Mr. Hamdan.

12        THE COURT:  Okay.  Good afternoon.  You can be seated.

13        This is a continuation of the detention hearing in

14  this matter we had last week.  I think it was about three hours

15  of testimony which I heard, both from the Government and from

16  Mr. Hamdan.

17        A Pretrial Services report was proffered.  I reviewed

18  that.  I also had the opportunity, as I said I would, to review

19  the transcripts, the translations of the recorded

20  conversations.  And I have to tell you, this is -- it's a

21  difficult decision.  This is actually one of the more difficult

22  detention issues that I've dealt with.

23        And as is often the case, after reviewing the

24  complaint as well the recorded conversations and hearing the

25  testimony, clearly there are two sides to the story.

1  Nonetheless, upon review of all of these matters, I am
2  going to order Mr. Hamdan detained pending trial. And I want
3  to explain clearly on the record why I'm making that decision
4  and the facts on which I base that decision.
5  First of all, the charge in this case, excuse me, is
6  attempting, providing or attempting to provide material support
7  to a foreign terrorist organization under 18 U.S. Code
8  2339B(1)(a).
9  Under Section 3142, which references Section
10 2332b(g)(5)(B), throwing out a lot of numbers here, the bottom
11 line is this is a statutory presumption case, which is a
12 rebuttable presumption that there are no conditions or
13 combinations of conditions that would reasonably assure the
14 appearance of the defendant as required. So we start with
15 that. And then we move on to the question of whether the
16 defendant has met the burden of production of showing that
17 there are indeed conditions that would guarantee both of those
18 factors.
19 For purposes of this hearing, I do find probable
20 cause, and this was without any prejudice to anything, any
21 additional information that might be revealed at a preliminary
22 examination, but for purposes of this hearing, I do find
23 probable cause to believe that Mr. Hamdan committed the charged
24 offense.
25 I'd like to refer to the transcripts. And I

1  understand that these are preliminary transcripts.  And of
2  course, Mr. Weiss indicated that there may be some variance
3  ultimately between what's in these transcripts and what might,
4  might come out with further refinement.  But for purposes of
5  this hearing, I am looking at these transcripts.
6          Now, we have two conversations.  One on January 28th,
7  2014, and one on March 16th, 2014.  Let me address the January
8  28th, 14 conversation.  And as Mr. Weiss pointed out, there's a
9  lot of conversation about a car, fixing a car, selling a car.
10 And to be sure, I find that there is some prodding and perhaps
11 prompting on the part of the, I'll call him the, I'll call him
12 the confidential informant.  Nonetheless, there are statements,
13 a number of statements that are offered by Mr. Hamdan that give
14 me some concerns.  And let me go over some of those statements.
15         Page 9, the informant asked, "When are you going?  Are
16 you going now or not?"  Mr. Hamdan answers, "Not till may or
17 June.  I'm preparing my American passport and want to get the
18 Lebanese one."
19         Standing by itself, this indicates that he's planning
20 on going to Lebanon.  I don't think anybody has disputed that
21 he's planning to go to Lebanon.  He had a roundtrip ticket.
22         We move on.  He expresses at page 12 some
23 dissatisfaction with the way things are going here.  He's not
24 comfortable, doesn't have a degree, work's not that good.  And
25 he indicates, and again this is prompting on the part of the

1   informant, do they pay?  He says, "I don't care, as long as the
2   food is being provided.  What else would you ask for?"
3           He then goes on in page 13, and I will allow that some
4   of these statements are, are subject to interpretation.  Mr.
5   Hamdan says, "They won't take me, the party," the party,
6   referring to the Party of God, or Hizballah, "the party won't
7   take me in.  Well, how are you going to get in?  Through a
8   public committee, they'll get you in.  Not anyone can get in.
9   That's the problem, the party won't let anyone in."  He talks
10  about the difficulty in joining the party, not anybody can, can
11  join.
12          But he goes on, on page 14, I'll stay there.  "I'll
13  stay there if they don't accept."  "They," I interpret that as,
14  as meaning the party.  "I have a way to come back."  So there's
15  sort on a contingency, sort of a plan B situation here.
16          It goes on, he talks about on page 15 going to Syria.
17  "Syrians love you to death.  Once they see that you're a
18  Lebanese trying to get in, you're all set."  He goes on,
19  conversations about the party.
20          And then on page 16, he says, and this gives me some
21  concern in terms of the risk of flight, "I am leaving behind
22  the family.  I'm leaving behind my parents, I'm leaving behind
23  people, but I cannot just leave this matter hanging, cannot
24  just simply ditch the matter."  And he goes on, he doesn't take
25  the advice of his uncle, he says, "because in the end, this is

1  my decision and not anyone else's.  I will be the one to lose
2  and no one else is going to lose."
3          He talks with some authority, I don't know if all of
4  his information that he's, he's talking about is factually
5  correct as opposed to just opinions or theory, but he talks
6  about the role of the party.  He talks about the Assad regime.
7  He talks about Syria.  He talks about the misfortune and indeed
8  the horrors that are visited upon the Shiite population.
9          And he goes on, and there was some conversation about
10 this at the hearing, where he said he was trained when he was
11 there.  The informant says, "where did you train, with the
12 army?  Down in Lebanon, yes."  The informant, "you served in
13 the Lebanese Army?  No.  What?"  Mr. Hamdan says, "no, with the
14 party."
15         They go on page, he goes on, on page 21 talking about
16 how his family hid the passport from him to prevent him from
17 going.  But he says, "it's going to take some time.  I'm going
18 to place an ad in the newspaper."  And later he says that he,
19 he in fact did obtain a temporary, a temporary passport.
20         He goes on, page 23, to talk about the money, the
21 support one gets with the party.  This is of some concern to me
22 on page 24, and this may be a really critical, one of the most
23 critical portions in the transcript.  He says, "I don't know if
24 you know my uncle Ramsey, his son and his second son, the
25 son-in-law, all of them are high up there.  His son is well

1  accomplished."
2          Informant: "High ranking official with the party?"
3          Mr. Hamdan: "Yeah."
4          So he has an uncle over there. And I'm, I'm taking
5  Mr. Hamdan's words at face value. And there is some discussion
6  and some argument at the hearing that he was going over there
7  in order to get some dental work done. And maybe he was going
8  to get some dental work done. But he said that his sister's
9  fear, his sister's fear and her reaction had to do with the
10 dangerous situation in Lebanon, not with Hizballah. But yet,
11 his sister, his friend went to Lebanon to get dental work done.
12         So what I infer from this is that the reaction has to
13 do with him getting together with his uncle, who he states is
14 high up and well accomplished in the party. And that's what
15 the, that's what the resistance from the family and the fear of
16 the family, and rightly so, is about.
17         He goes on, he says, "I want to go there," this is
18 page 27. "I have a lot of people, I'm going to see a lot of my
19 Lebanese friends are there, they are all there. In Syria?
20 Yes. Really, says the informant. But those are never coming
21 back.
22         In the complaint, there is listed a number of
23 activities, crimes that Hizballah has committed over the years
24 against the United States and against Americans.
25         In my reading of this transcript, I do not see an

1   indication that Mr. Hamdan sought to do harm to America or to
2   Americans.  He sought, according to what he is saying on this
3   transcript, he sought to fight or attempt to fight on behalf of
4   Shiite Muslims in Syria.  He specifically says in one part of
5   this that, well, they are not fighting America, they are not.
6   And I don't see an indication that he seeks to do harm to the
7   United States.
8           That's not real relevant in terms of the charge.
9   Either he, he attempted to give material support to a terrorist
10  organization, of which Hizballah is, or he didn't.  You know,
11  the motivation, at least in this sense isn't relevant.
12          But I, I think because the complaint does detail a
13  number of misdeeds of Hizballah aimed at the United States, I
14  do mention that the informant says at page 27, "I mean, I love
15  the party but I won't go down there."  And Mr. Hamdan says,
16  "it's not about loving them.  I'm the last one to love the
17  party."  It's a means to an end.
18          He goes on, page 30, to talk about, and there's a
19  discussion at the hearing regarding his application for a U.S.
20  citizenship.  He says, "If I have citizenship they cannot
21  question me."  Again, he may have mixed motives, but getting
22  citizenship is, is a means to an end.
23          He goes on, on page 38, and this, I'll concede that
24  this is sort of general talk/discussion about the situation.
25  He's talking about Da'Ish, "they screwed up everything.  They

1   were informants and prisoners escaped from prison in Saudi
2   Arabia.  If you were someone in prison for life and they say to
3   you, we will let you go, but you have to do something for us, I
4   will go blow up my family, if that's the case."
5           Okay.  Perhaps talk between general talk between two
6   guys, but it gives me concern that there's a tension between
7   his, his dedication to his family here -- and I have no doubt
8   that he does have, that he is close to his family here.  I saw
9   that at the hearing -- between that and, and what he's seeking
10  to do, ignoring his family's advice to not go to Lebanon and
11  Syria.
12          It indicates to me that in terms of whether there are
13  conditions that would reasonably assure, reasonably assure that
14  he's not going to be pulled in the direction of fleeing to
15  Lebanon, as opposed to staying here, I'm not persuaded that
16  there are conditions I could set that would reasonably assure
17  that.
18          We go to the conversation of March 16th, 2014.  And
19  this is the day he was to, to leave.  And again, he's talking
20  to the informant.  And he does say at one point on page 2, "I'm
21  going to go.  I'm going to have some fun, see some family, seek
22  amusement, visit the shrines."  Seems, seems innocuous enough.
23  He does say, "I have my uncle's family.  I have the whole world
24  over there."  Page 3.  Well, his uncle he's previously said is
25  highly placed in the party.  And again, he says, "if I come

1  back, that's it. It means that nothing had happened, I didn't
2  do anything." Again, he's got a plan B.
3        And he indicates at page 4, the informant says it's
4  good that your mother gave you the passport. He says, "no, I
5  fixed my passport. They gave me a temporary one." And he then
6  says on page 5, "I'm having cold feet about going there, but
7  I'm telling you, everything is being provided."
8        And he again says page 5, "I'm feeling bad just for my
9  parents because this is expatriation. Expatriation.
10 Expatriation is humiliating. I swear no one cares about
11 anyone."
12       The informant says, and this is the section where he
13 informant says, well, Hizballah is a terrorist organization.
14 You have to be careful. And he says, "I won't come back if I
15 make it there." If he is accepted into the party, he won't
16 come back. If he's not, he's got a plan B, he'll come back.
17       Again, he says, page 7, "I want to start my life, even
18 if nothing happens, to start a new life in case I come back
19 here one day. If I find out I cannot go over there after
20 staying one week in Lebanon, I will then come back here and
21 start a new life. If I don't go over then, there will be a lot
22 of people who will then think like me, acting indifferently.
23 If one forgets, then another forgets. It will become the
24 story. The story becomes forgotten."
25       So what we have, if you are looking at the two prongs,

```
 1   risk of flight and dangerousness, they are sort of related.  If
 2   he's here, if there were conditions that I felt would
 3   reasonably assure that he would stay in the United States, I
 4   don't think he's dangerous.  The danger is that he goes to
 5   Syria and takes part in the party, activities of the party.  So
 6   it really comes down to whether there are conditions I could --
 7   that would reasonably assure that he's going to show up.
 8           His family, and I was impressed frankly with the
 9   testimony of his family, I think his family cares for him.  I
10   think he has a good family.  I don't think that they can exert
11   sufficient control over him because they weren't able to do
12   that before.  They, they took his passport.  They pleaded with
13   him.  And he said no, I'll make my own decision, I'll go.
14           I'm not trying this case, but I think Mr. Hamdan is a
15   confused young man.  I think that in his confusion, there's a
16   certain instability.  And for these reasons, even imposing an
17   electronic tether, imposing third-party custody, I am not
18   convinced that would reasonably assure his appearance as
19   required, and hence, the safety of the community.  So
20   therefore, I will order him detained.
21           I want to say one more thing.  Mr. Weiss indicated at
22   the very beginning of these proceedings that his family had
23   real estate, might be willing to put up their real estate as
24   collateral for his appearance.  Under this Court's
25   administrative orders, I can't set a real estate bond.  That
```

1  can only be done by an Article III judge.
2          I don't know if Mr. Weiss, Mr. Hamdan, are going to at
3  some point appeal this decision, my decision.  Of course, if it
4  is appealed, that's considered *de novo* by the district judge.
5  As I say, I can't set a real estate bond.  So whether that
6  would tip the balance is not something I need to decide today.
7          If you want to present that, Mr. Weiss, to the
8  district judge, you may do so.  But based on the record before
9  me and based on the parameters of my jurisdiction, I'll order
10 Mr. Hamdan detained pending trial.
11         MR. WEISS:  Thank you.
12         THE COURT:  Anything else for the record?
13         MR. WEISS:  Will you be setting a preliminary
14 examination date?
15         THE COURT:  We will.
16         THE CLERK:  Preliminary --
17         MR. WEISS:  In light of the Court's familiarity with
18 this --
19         THE COURT:  Could you step up to the microphone?
20 Because I can't hear you.
21         MR. WEISS:  Your Honor, in light of your Honor's
22 familiarity with this case, will you conduct the preliminary
23 examination?
24         THE COURT:  Well, let's see.  Mr. Hamdan's first
25 appearance was March 17th?

1           THE CLERK:  Preliminary exam will be April 4th.
2           THE COURT:  April 4th?
3           (Brief pause.)
4           MR. WEISS:  Your Honor, may counsel approach while
5    the --
6           THE COURT:  Yeah.  Hang on a second.  Hang on just a
7    second.
8           (Brief pause.)
9           THE COURT:  I'm sorry, Mr. Weiss.  You wanted to
10   approach?
11          MR. WEISS:  Yeah.  If I could.
12          THE COURT:  This doesn't need to be on the record.
13          (Off the record side bar, 1:44 p.m. - 1:46 p.m.)
14          THE COURT:  Okay.  Mr. Weiss, you wanted to adjourn
15   the preliminary exam to the 14th?
16          MR. WEISS:  The 14th or the 15th.  And that would
17   still be within the 30-day period.
18          THE COURT:  Is that acceptable to your client?
19          MR. WEISS:  Your Honor, would you want him to stand up
20   and acknowledge?
21          THE COURT:  He can remain seated and just speak into
22   the microphone there.
23          MR. WEISS:  Have the preliminary examination either on
24   April 14th or 15th?
25          THE DEFENDANT:  Yes, sir.

1           THE COURT: You understand you have a right to a
2  preliminary examination within 14 days of March 17th, so we're
3  going to be putting this over for maybe about two additional
4  weeks. Is that acceptable to you?
5           THE DEFENDANT: Yes, sir.
6           THE COURT: Okay. Fine.
7           Mr. Weiss, Mr. Waterstreet, if you would just check
8  with my judicial assistant after the hearing, tell me your
9  availability on the 14th and 15th, and we'll set it for 1:00 in
10 the afternoon at one of those days.
11          MR. WEISS: Thank you, your Honor.
12          THE COURT: Okay. Thank you.
13          MR. WEISS: Your Honor, will that be up here or would
14 that be in the duty courtroom?
15          THE COURT: I'll have to check my calendar and see
16 where I'm sitting that day.
17          MR. WEISS: Thank you.
18          THE COURT: Okay.
19      (Proceedings concluded, 1:48 p.m.)
20
21                          *     *     *
22
23
24
25

**CERTIFICATE OF REPORTER**

As an official court reporter for the United States District Court, appointed pursuant to provisions of Title 28, United States Code, Section 753, I do hereby certify that the foregoing is a correct transcript of the proceedings in the above-entitled cause on the date hereinbefore set forth.


s/ Christin E. Russell

CHRISTIN E. RUSSELL, RMR, CRR, FCRR, CSR

Federal Official Court Reporter