UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff

Honorable Gerald E Rosen

-vs-

MOHAMMAD HASSAN HAMDAN,              Case No 14-cr-20232-GER-DRG

Defendant

_____/

## MOTION FOR REVOCATION OF DETENTION ORDER

NOW COMES the Defendant, MOHAMMAD HASSAN HAMDAN, by his attorney, ARTHUR JAY WEISS, and pursuant to 18 USC § 3145 (b), respectfully moves this Honorable Court for Revocation of Detention Order, and in support thereof, says as follows:

1. That the Defendant, MOHAMMAD HASSAN HAMDAN, is charged in an one (1) count indictment (R 11 Pg ID 180-181) with attempting to provide material support to a foreign terrorist organization, 18 USC § 2339B (a) (1).

2. That at the conclusion of a detention hearing conducted before the Honorable Magistrate Judge R Steven Whalen, Mr Hamdan was "order[ed] . . . detained pending trial" (R 10 Detention Hearing Transcript Pg ID 176).

1

3. That pursuant to 18 USC § 3145 (b), this Court is empowered to entertain "a motion for revocation or amendment of [that] order," engaging in a *de novo* review analysis, *see generally*, *United States* v *Hazime*, 762 F 2d 34, 36 (6th Cir 1985).

4. That for the reasons set forth in the attached Brief in Support of Motion for Revocation of Detention Order, your Defendant respectfully submits there is a combination of release conditions which "will reasonably assure [his] appearance . . . and the safety of any other person and the community," 18 USC § 3142 (f); *see*, *e g*, *United States* v *Goba*, 220 F Supp 2d 182, 194-196 (WD NY 2002).

5. That on or about April 11, 2016, undersigned counsel contacted Mr Ronald W Waterstreet, Assistant United States Attorney, for purposes of securing concurrence in this motion, but said concurrence was denied.

WHEREFORE, the Defendant, MOHAMMAD HASSAN HAMDAN, respectfully prays this Honorable Court enter an Order releasing him on bond with any special conditions the Court deems necessary and appropriate in these premises.

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS (P 25225)
Attorney for Defendant
30445 Northwestern Highway
Suite 225
Farmington Hills Michigan 48334-3158
(248) 855-5888
arthurweiss@ajweisslaw.com

Dated: April 20 2016.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Honorable Gerald E Rosen

Plaintiff

-vs-                                                      Case No 14-cr-20232-GER-DRG

MOHAMMAD HASSAN HAMDAN,

Defendant

_____/

BRIEF IN SUPPORT OF
MOTION FOR REVOCATION OF DETENTION ORDER

ARTHUR JAY WEISS (P 25225)
Attorney for Defendant
30445 Northwestern Highway
Suite 225
Farmington Hills, Michigan 48334-3158
(248) 855-5888
arthurweiss@ajweisslaw.com

## TOPICAL INDEX

Page

TABLE OF AUTHORITIES i

QUESTION PRESENTED 1

CONTROLLING AUTHORITY 2

STATEMENT OF FACTS 3

ARGUMENT

    I.    PRETRIAL DETENTION IS NOT APPROPRIATE WHEN
        THERE ARE CONDITIONS OF RELEASE WHICH WILL
        PROTECT THE SAFETY OF THE COMMUNITY AND
        REASONABLY ASSURE THE DEFENDANT'S
        APPEARANCE WHEN REQUIRED. 6

RELIEF REQUESTED 11

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*United States* v *Birges*, 523 F Supp 472
    (D Nev 1981).        8

*United States* v *Cox*, 635 F Supp 1047
    (D Kan 1986).        7

*United States* v *Cruz*, 363 F Supp 2d 40
    (D PR 2005).        7

*United States* v *Delker*, 757 F 2d 1390
    (3d Cir 1985).        10

*United States* v *Demmler*, 523 F Supp 2d 677
    (SD Ohio 2007).        9

*United States* v *Dominguez*, 783 F 2d 702
    (7th Cir 1986).        9

*United States* v *Dreier*, 596 F Supp 2d 831
    (SD NY 2009).        9

*United States* v *Eischeid*, 315 F Supp 1d 1033
    (D Ariz 2003).        8

*United States* v *Goba*, 220 F Supp 2d 182
    (WD NY 2002).        6

*United States* v *Gray*, 651 F Supp 432
    (WD Ark 1987).        7,9

i

## TABLE OF AUTHORITIES (Continued)

Page

### FEDERAL CASES (Continued)

*United States* v *Hazime*, 762 F 2d 34
    (6th Cir 1985).      8

*United States* v *Hurtado*, 779 F 2d 1467
    (11th Cir 1985).      8

*United States* v *Jeffries*, 687 F Supp 1114
    (MD Ga 1988).      10

*United States* v *Knight*, 636 F Supp 1463
    (SD Fla 1986).      10

*United States* v *Orta*, 760 F 2d 887
    (8th Cir *en banc* 1986).      7

*United States* v *Phillips*, 732 F Supp 255
    (D Mass 1990).      7,8

*United States* v *Ridinger*,
    623 F Supp 1386
    (D Mo 1985).      7

### FEDERAL STATUTES

18 USC § 2339B      6

18 USC § 2339B (a) (1)      3

18 USC §§ 3141      6

# TABLE OF AUTHORITIES (Continued)

Page

## FEDERAL STATUTES (Continued)

18 USC § 3142                                                                  9

18 USC § 3142 (f) (1)                                                          6

## QUESTION PRESENTED

### I.

Is pretrial detention appropriate when there are conditions of release

which will protect the safety of the community and reasonably assure the

Defendant's appearance when required?

1

## CONTROLLING AUTHORITY

*United States* v *Goba*, 220 F Supp 2d 182 (WD NY 2002).

## STATEMENT OF FACTS

The Defendant, MOHAMMAD HASSAN HAMDAN, is accused in an one (1) count indictment with attempting to provide material support to a foreign terrorist organization, 18 USC § 2339B (a) (1) (R 11 Pg ID 180-181). While there is no dispute Hizbollah was in 1997 designated as a Foreign Terrorist Organization by Secretary of State, 62 Fed Reg 52.650, 1997 WL 614271 (1997), we are also cognizant in 2015 "the Office of the Director of National Intelligence" opined "Hezbollah do[es] represent a terrorist threat to US interests or our allies abroad" (Exhibits "A" and "B").

Mr Hamdan, at the time of the alleged offense, was twenty-two (22) years of age. He was born with a non-functional right lung which required immediate neonatal surgery, causing significant medical issues including chronic respiratory illness from infancy to the present. Several childhood incidents, some of which necessitated surgery, resulted in permanent weakness to both his knees, as well as chronic pain while standing and/or walking. In addition, automobile accidents in 2009 left him with nerve damage to his left shoulder and numbness in both legs; currently both upper body movement and short-distance walking are painful and laborious.

He suffers from mild neuropsychological impairment consistent with low average/borderline level of intellectual functioning (Exhibit "C"). A clinical

3

examination concluded he presents Persistent Depressive Disorder which combines

the symptoms of Chronic Major Depressive Disorder and Dysthymic Disorder

(Exhibit "C").

Shortly before the events giving rise to the instant accusation, your

Defendant's *only* non-familial personal relationship was irreparably and

emphatically terminated.

> Regarding his relational history, the patient reported his only
> relationship of substance was with a woman he dated for five years until
> they became engaged to marry on July 7, 2013. According to him upon
> meeting who were to become his future in-laws his fiancé's mother took
> an immediate dislike of him and in essence forbade her daughter to marry
> him. . . . According to the patient when his former fiancé then refused to
> reconcile their differences he said for the first time to her or anybody else
> "that's when I told her that if you don't come back to me I'm going to go
> to Syria to fight with the people over there to protect the Shrines."
> (Exhibit "C").

Your Defendant's reaction "to the abandonment by his fiancé [caused]

profound feelings of humiliation, shame, and degradation, to which he responded

by wishing to make her feel forever guilty for her actions by choosing 'to hurt

myself by going into danger in the fight to save the shrines.'" (Exhibit "C").

> [I]t is important to document what was not found in the extensive
> examination of the patient's mind and brain. First, there was no evidence
> of a super ego structure in the patient that would allow for homicidal
> intent or action. Second, there was no evidence of a fixed religiosity in
> the patient that would justify allegiance to or alignment with a group
> whose psychology promotes psychopathic action. And third, there was
> clear evidence of the operation of anxiety and guilt in the patient's mind
> by history, with the presence of these two signal affects further affirming
> that the patient's present intrapsychic defenses would disallow

surrendering the self to actions contrary to the values of his family of
origin. (Exhibit "C").

Acutely aware of your Defendant's psychological and physical
difficulties, as well as his vulnerable emotional situation, an acquaintance who
desired to secure "an immigration benefit by working with the Government" (R 9
Detention Hearing Transcript[1] Pg ID 60), engaged Mohammad in a series of
conversation apparently designed to elicit him (Hamdan) to *verbalize* on Hizbollah.

Despite the collective resources and strategies of the Federal Bureau of
Investigation, as well as numerous attempts by their informant to ensnare
MOHAMMAD HASSAN HAMDAN into musing about joining Hizbollah, his
(Hamdan's) consistent retort was "they won't take me" (R 9 DHT Pg ID 73);
undaunted, the informant raised the specter of assistance, to which Mohammad
eloquently, but significantly, replied, he "doesn't want to use connections" (R 9
DHT Pg ID 73). Crucially, your Defendant never articulated "I am going to join
Hizbollah. He doesn't say I am supporting Hizbollah [or] I am going to do
something for Hizbollah . . . none of that [is ever mentioned]" (R 9 DHT Pg ID
156).

---

[1]"Detention Hearing Transcript" will hereafter be referred to as "DHT."

5

<u>ARGUMENT</u>

I. PRETRIAL DETENTION IS NOT APPROPRIATE WHEN THERE
ARE CONDITIONS OF RELEASE WHICH WILL PROTECT THE
SAFETY OF THE COMMUNITY AND REASONABLY ASSURE
THE DEFENDANT'S APPEARANCE WHEN REQUIRED.

<u>A.</u>

MOHAMMAD HASSAN HAMDAN does not dispute the accusation at

bar is an offense for which pretrial detention *may* be employed, 18 USC § 3142 (f)

(1). Nonetheless, the facts attendant in the instant prosecution are sufficient "to

offset the government's claim [even when the accused is charged with violating 18

USC § 2339B] of dangerousness and risk of flight so as to prevent [the Court] from

a legal point of view, from concluding that there are no conditions or combination

of conditions that [it] could impose that would reasonably assure the safety of the

community and his appearance when required. To do otherwise would be

intellectually dishonest." *United States* v *Goba*, 220 F Supp 2d 182, 194-196 (WD

NY 2002).

<u>B.</u>

In enacting 18 USC §§ 3141 *et seq*, "Congress envisioned the pretrial

detention of only a fraction of accused individuals awaiting trial. . . [and equating

6

'reasonably assure' with 'guarantee' would] virtually mandate [] the detention of almost every pretrial defendant: no safeguard can 'guarantee' the avoidance of the statutory concerns." *United States* v *Orta*, 760 F 2d 887, 891-892 (8th Cir *en banc* 1986). *Accord*: *United States* v *Phillips*, 732 F Supp 255, 266 (D Mass 1990) ("if the statute were interpreted as requiring a guarantee against any harm, pretrial preventive detention would become the norm rather than the exception because such guarantees could be made in almost no cases"). *See also*, *United States* v *Cruz*, 363 F Supp 2d 40, 47 (D PR 2005); *United States* v *Ridinger*, 623 F Supp 1386, 1393 (D Mo 1985).

Moreover, "not only did Congress intend that very few persons would be held in prison pending trial, Congress specifically made more difficult the government's burden of proof [by codifying a 'clear and convincing evidence' standard] necessary to show that an accused should be held in jail pending trial." *United States* v *Gray*, 651 F Supp 432, 437 (WD Ark 1987).

> Though allowing pretrial detention, the statute is structured so that every other form of release, including release on conditions . . . must be considered first. *United States* v *Orta*, 760 F 2d 887, 892 (8th Cir 1985). Only as a last resort should pretrial detention be invoked. *United States* v *Cox*, 635 F Supp 1047, 1050 (D Kan 1986).

Furthermore, the fundamental precept is the determination for pretrial detention "must ultimately be based on the evidence regarding the *particular defendant* before the court and not on evidence regarding types of circumstances,

7

or groups or types of defendants who are like the individual defendant before the court in some other way than those identified by the statute. . . . [T]he fact finding function of the court in a pretrial detention decision *must be focused on one individual—the defendant—and the court must view that defendant as an individual*." *United States* v *Phillips*, *supra*, 732 F Supp at 264 (Emphasis added).

With due respect, it is anathema to our jurisprudence to simply "come before the trial court, present [an] indictment and thereby send the defendant off to jail. . . ." *United States* v *Hurtado*, 779 F 2d 1467, 1478 (11th Cir 1985). *See also*, *United States* v *Hazime*, 762 F 2d 34, 35 (6th Cir 1985); *United States* v *Eischeid*, 315 F Supp 1d 1033, 1036-1037 (D Ariz 2003).

## C.

An examination of Mr Hamdan's background is not "indicative of [a] failure to abide by prior conditions of supervision," *United States* v *Vasoncellos*, 519 F Supp 2d 311, 319 (ND NY 2007). To the contrary, when Mohammad was on probation to the District Court for the 20th Judicial District, he was fastidious in securing appropriate judicial approval for his trip outside the country (Exhibit "D"). In our estimation, "[t]his is an indication the defendant would stay, rather than flee." *United States* v *Birges*, 523 F Supp 472, 476 (D Nev 1981).

## D.

In light of the foregoing, MOHAMMAD HASSAN HAMDAN

respectfully submits pretrial detention is neither warranted nor appropriate in this

cause; that within the meaning and purpose of the Bail Reform Act of 1984, 18

USC § 3142, there exists reasonable conditions which can assure the Court of his

appearance when requested and his avoidance of further difficulties, including not

engaging in any activity which could even remotely be construed as a danger to the

community. *See, e g, United States* v *Dominguez*, 783 F 2d 702, 705-706 (7th Cir

1986); *United States* v *Dreier*, 596 F Supp 2d 831, 835-836 (SD NY 2009); *United

States* v *Demmler*, 523 F Supp 2d 677, 680-684 (SD Ohio 2007).

Whatever may be surmised from a realistic critique of various surgically

elicited snippets of the conversations in which Mr Hamdan was a participant, it is

evident the Magistrate Judge opined your Defendant stated the "Shiite Muslims in

Syria . . . [were] not fighting America, they are not. And I don't see an indication

that he seeks to do harm to the United States" (R 10 DHT Pg ID 172).

This recognition, in juxtaposition to the determination of "the Office of

the Director of National Intelligence . . . Hezbollah do[es] not represent a terrorist

threat to US interests or our allies abroad" (Exhibits "A" and "B"), demonstrates

the government has not satisfied its burden of presenting the statutorily mandated

"clear and convincing evidence," *United States* v *Gray*, *supra*, 651 F Supp at 437.

9

In other words, there is a complete an absence of "ongoing criminal activity"

which is indicative of a lack of "dangerousness" for purposes of pretrial release.

*See, e g, United States* v *Delker*, 757 F 2d 1390, 1400 (3d Cir 1985); *United States*

v *Jeffries*, 687 F Supp 1114, 1116 (MD Ga 1988); *United States* v *Knight*, 636 F

Supp 1463, 1467-1468 (SD Fla 1986).

> [S]hould the court choose to release the patient from his current
> incarceration facility and transfer him to some manner of a supervised
> release residence, it is the expert opinion of this Examiner that the patient
> is at present of low risk for flight, and, is at present of no threat to himself
> or others (Exhibit "C").

## E.

During the initial detention hearing this writer advised family members

were "willing to put up their own homes" as a demonstration of their belief

Mohammad would comply with any and all conditions of release (R 9 DHT Pg ID

157). While the Magistrate Judge acknowledged he "can't set a real estate bond"

(R 10 DHT Pg ID 176), if there was a *de novo* appeal to the District Judge, the

jurist queried whether such collateral "would tip the balance is not something I

need to decide today" (R 10 DHT Pg ID 176).

Consistent with the foregoing, family members are willing to place their

respective residences—where they, their families, their children and themselves

reside—not only as *collateral* for Mr Hamdan's compliance with any conditions of

10

release to be set by the Court, but also their collective recognition he *will comply*
with said conditions (Exhibits "E," "F," "G," "H," "I" and "J").

## RELIEF REQUESTED

WHEREFORE, the Defendant, MOHAMMAD HASAN HAMDAN,

respectfully prays this Honorable Court enter an Order releasing him on bond with

any special conditions the Court deems necessary and appropriate in these

premises.

Respectfully Submitted,

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS (P 25225)
Attorney for Defendant
30445 Northwestern Highway
Suite 225
Farmington Hills Michigan 48334-3158
(248) 855-5888
arthurweiss@ajweisslaw.com

Dated: April 20 2015.

11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff

                                        Honorable Gerald E Rosen

-vs-

MOHAMMAD HASSAN HAMDAN,                 Case No 14-cr-20232-GER-DRG

                    Defendant
_____/

## CERTIFICATE OF SERVICE

        ARTHUR JAY WEISS, counsel of record for MOHAMMAD HASSAN

HAMDAN, the Defendant in the above-entitled matter, hereby Certifies that on the

20th day of April 2016, he served all counsel of record with a copy of Motion for

Revocation of Detention Order, Brief in Support of Motion for Revocation of

Detention Order and Certificate of Service relative to the above-entitled matter by

electronic means.

                                        /s/ Arthur Jay Weiss
                                        ARTHUR JAY WEISS (P 25225)