UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff

Honorable Gerald E Rosen

-vs-

MOHAMMAD HASSAN HAMDAN,

Case No 14-cr-20232-GER-DRG

Defendant

_____/

## MOTION TO DISMISS INDICTMENT

NOW COMES the Defendant, MOHAMMAD HASSAN HAMDAN, by his attorney, ARTHUR JAY WEISS, and pursuant to Rule 12 (b) (3) (B) of the Federal Rules of Criminal Procedure, respectfully moves this Honorable to Dismiss the Indictment, and in support thereof, says as follows:

1. That the Defendant, MOHAMMAD HASSAN HAMDAN, is charged in an one (1) count indictment (R 11 Pg ID 180-181) with attempting to provide material support to a foreign terrorist organization, 18 USC § 2339B (a) (1).

2. That for the reasons set forth in the accompanying Brief in Support of Motion to Dismiss Indictment, your Defendant respectfully submits the same is

1

deficient and should be dismissed, *see*, *United States* v *Yakou*, 428 F 3d 241, 243
(DC Cir 2005).

    3. That on or about April 11, 2016, undersigned counsel contacted Mr

Ronald W Waterstreet, Assistant United States Attorney, for purposes of securing

concurrence in this motion, but said concurrence was denied.

    WHEREFORE, the Defendant, MOHAMMAD HASSAN HAMDAN,

respectfully prays that this Honorable Court Dismiss the Indictment.

> /s/Arthur Jay Weiss
> ARTHUR JAY WEISS (P 25225)
> Attorney for Defendant
> 30445 Northwestern Highway
> Suite 225
> Farmington Hills, Michigan 48334-3158
> (248) 855-5888
> arthurweiss@ajweisslaw.com

Dated: April 20 2016.

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Honorable Gerald E Rosen

Plaintiff

-vs-

Case No 14-cr-20232-GER-DRG

MOHAMMAD HASSAN HAMDAN,

Defendant

_____/

BRIEF IN SUPPORT OF
MOTION TO DISMISS INDICTMENT

ARTHUR JAY WEISS (P 25225)
Attorney for Defendant
30445 Northwestern Highway
Suite 225
Farmington Hills, Michigan 48334-3158
(248) 855-5888
arthurweiss@ajweisslaw.com

## TOPICAL INDEX

Page

TABLE OF AUTHORITIES                                          i

QUESTION PRESENTED                                           1

CONTROLLING AUTHORITY                                        2

STATEMENT OF FACTS                                          3

ARGUMENT

I.    THE DISTRICT COURT IS EMPOWERED TO DISMISS AN
      INDICTMENT WHICH IS LEGALLY DEFICIENT.               5

RELIEF REQUESTED                                           17

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Boim* v *Quiranc Literacy Institute
and Holy Land Foundation for Relief
and Development*, 291 F 3d 1000
(7th Cir 2002).                                           10

*Elonis* v *United States*, —US—,
135 S Ct 2001, 192 L Ed 2d 1
(2015).                                                  10

*Holder* v *Humanitarian Law Project*, 561
US 1, 130 S Ct 2705, 177 L Ed 2d
355 (2010).                                       8,9,10,11,14,16

*United States* v *Al-Arian*, 308 F Supp 2d
1322 (MD Fla 2004), *reh den*, 329
F Supp 2d 1294 (MD Fla 2004).                            10

*United States* v *Anderson*, 747 F 3d 51
(2d Cir 2014).                                           15

*United States* v *Argueta-Rosales*, —F 3d—,
2016 WL 1425881 (9th Cir 2016).                          11

*United States* v *Awan*, 459 F Supp 2d 167
(ED NY 2006).                                            11

*United States* v *Bailey*, —F 3d—,
2016 WL 1426295
(4th Cir 2016).                                          11

## TABLE OF AUTHORITIES (Continued)

Page

### FEDERAL CASES (Continued)

*United States* v *Crowley*, 318 F 3d
    401 (2d Cir 2003).      16

*United States* v *Delvecchio*, 816 F 2d
    859 (2d Cir 1984).      16

*United States* v *Farhane*, 634 F 3d 127
    (2d Cir 2011).      8,15,16

*United States* v *Hammoud*, 381 F 3d 316
    (4th Cir 2004).      8,9

*United States* v *Houston*, 792 F 3d 663
    (6th Cir 2015).      11

*United States* v *Ivic*, 700 F 2d 51
    (2d Cir 1983).      15

*United States* v *Marzook*, 383 F Supp 2d
    1056 (ND Ill 2005).      9

*United States* v *Naseer*, 38 F Supp 3d 269
    (ED NY 2014).      12,13

*United States* v *Rosa*, 11 F 3d 315
    (2d Cir 1993).      15,16

*United States* v *Sattar*, 272 F Supp 2d
    348 (SD NY 2003).      15

## TABLE OF AUTHORITIES (Continued)

Page

### FEDERAL CASES (Continued)

*United States* v *Sidorenko*, 102 F Supp 3d
    1124 (ND Cal 2015).      12,13

*United States* v *Taleb-Jedi*, 566 F Supp 2d
    157 (ED NY 2008).      8,14

*United States* v *Warsame*, 537 F Supp 2d
    1005 (D Minn 2008).      9

*United States* v *Yousef*, 327 F 3d 56
    (2d Cir 2003).      12,15

*Village of Hoffman Estates* v *Flipside,*
    *Hoffman Estates*, 455 US 489,
    495 n 7, 102 S Ct 1186, 71 L Ed
    2d 362 (1982).      11

### FEDERAL STATUTES

18 USC §§ 2339A (b)      11

18 USC § 2339A (b) (1)      14

18 USC § 2339B      8,9,10

18 USC § 2339B (a) (1)      5,11,14

18 USC § 2339B (d) (2)      12

# TABLE OF AUTHORITIES (Continued)

<u>Page</u>

## FEDERAL STATUTES (Continued)

18 USC § 2339B (h)                                                         14,15

## QUESTION PRESENTED

## I.

Is the District Court empowered to dismiss an indictment which is legally

deficient?

## CONTROLLING AUTHORITIES

*Elonis* v *United States*, —US—, 135 S Ct 2001, 192 L Ed 2d 1 (2015).

*Holder* v *Humanitarian Law Project*, 561 US 1, 130 S Ct 2705, 177 L Ed 2d 355 (2010).

*United States* v *Farhane*, 634 F 3d 127 (2d Cir 2011).

*United States* v *Sattar*, 272 F Supp 2d 348 (SD NY 2003).

*United States* v *Sidorenko*, 102 F Supp 3d 1124 (ND Cal 2015).

*United States* v *Yousef*, 327 F 3d 56 (2d Cir 2003).

2

## STATEMENT OF FACTS

The Defendant, MOHAMMAD HASSAN HAMDAN, is accused in an one (1) count indictment with attempting to provide material support to a foreign terrorist organization, 18 USC § 2339B (a) (1) (R 11 Pg ID 180-181).

Acutely aware of your Defendant's psychological and physical difficulties[1], as well as his vulnerable emotional situation[2], an acquaintance who desired to secure "an immigration benefit by working with the Government" (R 9 Detention Hearing Transcript[3] Pg ID 60), engaged Mohammad in a series of conversation apparently designed to elicit him (Hamdan) to *verbalize* on Hizbollah.

Despite the collective resources and strategies of the Federal Bureau of Investigation, as well as numerous attempts by their informant to ensnare MOHAMMAD HASSAN HAMDAN into musing about joining Hizbollah, his (Hamdan's) consistent retort was "they won't take me" (R 9 DHT Pg ID 73); undaunted, the informant raised the specter of assistance, to which Mohammad eloquently, but significantly, replied, he "doesn't want to use connections" (R 9 DHT Pg ID 73).

Crucially, your Defendant never articulated "I am going to join Hizbollah. He doesn't say I am supporting Hizbollah [or] I am going to do

---

[1]*See*, Brief in Support of Motion for Revocation of Detention Order.
[2]See footnote 1, *supra*.
[3]"Detention Hearing Transcript" will hereafter be referred to as "DHT."

3

something for Hizbollah . . . none of that [is ever mentioned]" (R 9 DHT Pg ID 156). Whatever may be surmised from a realistic critique of various surgically elicited snippets of the lengthy conversations in which Mr Hamdan was a participant, it is evident the Magistrate Judge opined your Defendant stated the "Shiite Muslims in Syria . . . [were] not fighting America, they are not. And I don't see an indication that he seeks to do harm to the United States" (R 10 DHT Pg ID 172).

4

## ARGUMENT

### I. THE DISTRICT COURT IS EMPOWERED TO DISMISS AN INDICTMENT WHICH IS LEGALLY DEFICIENT.

If you're looking everywhere for [terrorists], you will find [terrorists] everywhere, even where they don't exist.
http://www.nytimes.com/2015/05/10/business/accused-of-spying-for-china-until-she-wasnt.html.

### A.

The fact that speech is likely to result in some violence or in destruction to property is not enough to justify its suppression. There must be the probability of serious injury to the State. Among free men, the deterrents ordinarily to be applied to prevent crime are education and punishment for violations of the law, not abridgment of the rights of free speech and assembly, *Whitney* v *California*, 274 US 357, 378, 47 S Ct 641, 71 L Ed 1095 (1927), *rev'd in part*, 395 US 444, 89 S Ct 1827, 23 L Ed 2d 930 (1969) (Brandeis, J, concurring).

It is a basic precept of our constitutional jurisprudence "whenever the fundamental rights of free speech and assembly are alleged to have been invaded," the clear and present danger test "requires a court to make its own inquiry into the imminence and magnitude of the danger said to flow from the particular utterance and then to balance the character of the evil, as well as its likelihood, against the need for free and unfettered expression." *Landmark Communications Inc* v *Virginia*, 435 US 829, 843-844, 98 S Ct 1535, 56 L Ed 2d 1 (1978).

In this context, the government's allegations must demonstrate (i) the defendant specifically intended to bring about the precise harm articulated in the statute; and (ii) there was "a clear and present danger," which the Supreme Court has defined as "imminent lawless action," *see, e g, Hartzel* v *United States*, 322 US 680, 686-687 (64 S Ct 1233, 88 L Ed 1534 (1944); *see also, Brandenburg* v *Ohio*, 395 US 444, 449, 89 S Ct 1827, 23 L Ed 2d 430 (1969). Paramount recognition is accorded to "[s]tatutes affecting the right of assembly, like those touching on freedom of speech," since they must be applied to "observe the established distinctions between mere advocacy and incitement to imminent lawless action." *Brandenburg* v *Ohio*, *supra*, 395 US at 449 n 4.

"The question in every case is . . . a question of proximity and degree," *i e*, whether "a present conflagration" in accord with the charged offense is imminent. *See*, *Schenk* v *United States*, 249 US 47, 57, 39 S Ct 247, 63 L Ed 470 (1919); *Gitlow* v *New York*, 268 US 652, 673, 45 S Ct 625, 69 L Ed 1138 (1925) (Holmes, J, dissenting); *see also*, *Brandenburg* v *Ohio*, *supra*, 395 US at 449. In other words, "the degree of imminence" of the evil at issue must be "extremely high" before utterances lose the protection of the First Amendment, *Bridges* v *California*, 314 US 252, 263, 62 S Ct 190, 86 L Ed 192 (1941).

Accordingly, criminal enactments must be construed and tempered "with the commands of the First Amendment clearly in mind." *Watts* v *United States*,

394 US 705, 707, 89 S Ct 1399, 22 L Ed 2d 664 (1969). Consequently, the judiciary "must interpret the language Congress chose 'against the background of a profound national commitment to the principle that debate . . . should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks . . . ,'" *Watts* v *United States*, *supra*, 394 US at 708, citing *New York Times Co* v *Sullivan*, 376 US 254, 270, 84 S Ct 710, 11 L Ed 2d 686 (1964).

Therefore, a statute may be applied to criminalize only expression when the speech, thought and/or assembly is directed to inciting or producing imminent lawless action in accord with the offense charged and is likely to produce or incite such action, *see generally*, *Brandenburg* v *Ohio*, *supra*, 395 US at 449.

In the instant cause, the words spoken by MOHAMMAD HASSAN HAMDAN were simply that: words. Nothing happened afterwards which would demonstrate Mr Hamdan intended and/or attempted to provide material support to a foreign terrorist organization. His conversations with the government's Source was merely protected "pure speech." *See*, *e g*, *Hess* v *Indiana*, 414 US 105, 94 S Ct 326, 38 L Ed 2d 303 (1973); *Herndon* v *Lowry*, 301 US 242, 258, 57 S Ct 732, 81 L Ed 2d 1066 (1937).

> One's beliefs have long been thought to be sanctuaries which government could not invade.

\*       \*       \*

> The line between what is permissible and not subject to control and what may be made impermissible and subject to regulation is the line between ideas and overt acts.
>
> The example usually given by those who would punish speech is the case of one who falsely shouts fire in a crowded theatre. *Brandenburg* v *Ohio*, *supra*, 395 US at 456 (Douglas, J, concurring).

Significantly, attempting to board a plane for Europe should not be construed as an "attempt to provide material support and resources . . . to a foreign terrorist organization . . . ." (R 11 Indictment Pg ID 180-181), since this occurrence cannot be interpreted as "*any contribution*" to a foreign terrorist organization, *see*, *e g*, *Holder* v *Humanitarian Law Project*, 561 US 1, 25-28, 130 S Ct 2705, 177 L Ed 2d 355 (2010); *United States* v *Farhane*, 634 F 3d 127, 148 (2d Cir 2011).

## B.

18 USC § 2339B " 'does not prohibit mere association,' *United States* v *Hammoud*, 381 F 3d 316, 329 (4th Cir 2004), *vacated on other grounds*, 543 US 1097, 125 S Ct 1051, 160 L Ed 2d 997 (2005), *reinstated in part*, 405 F 3d 1034 (4th Cir 2005)." *United States* v *Taleb-Jedi*, 566 F Supp 2d 157, 168 (ED NY 2008). Accordingly, an individual "remains free to sympathize with or advocate in favor of [Hizbollah]," *Id* at 177.

> It is well settled that the First Amendment "restricts the ability of the state to impose liability on an individual solely because of his association with another." *NAACP* v *Claiborne Hardware Co*, 458 US 886, 918-19,

8

102 S Ct 3409, 73 L Ed 2d 1215 (1982). The Supreme Court has observed that a "blanket prohibition of association with a group having both legal and illegal aims . . . [would pose] a real danger that legitimate political expression or association would be impaired." *Scales* v *United States*, 367 US 203, 229, 81 S Ct 1469, 6 L Ed 2d 782 (1961). Mere membership, without more, in an organization that has legal and illegal goals may not be prohibited or punished under the First Amendment. *United States* v *Hammoud*, 381 F 3d 316, 328 (4th Cir 2004). *United States* v *Warsame*, 537 F Supp 2d 1005, 1013 (D Minn 2008); *accord*: *United States* v *Marzook*, 383 F Supp 2d 1056, 1067-1068 (ND Ill 2005).

The discussions in which your Defendant was a participant—even if he was "espousing or sympathizing with the views of [Hizbollah], however unpopular those views might be"—are not proscribed by 18 USC § 2339B, *United States* v *Warsame*, *supra*, 537 F Supp 2d at 1014 (citation omitted). Rather, this enactment "prohibits providing 'material support'" to such a group, *Holder* v *Humanitarian Law Project*, *supra*, 561 US at 18.

Query, then, where in the pertinent conversations did MOHAMMAD HASSAN HAMDAN even remotely suggest he would provide the requisite "material support" to Hizbollah.[4] Mr Hamdan articulated his desire "to stay [in Lebanon] for two (2) weeks" and "then . . . go[] to Syria to see a shrine" (R 9 Detention Hearing Transcript[5] Pg ID 73). Nowhere is there a demonstration of a recognition his travel "would further the illegal activities of [Hizbollah]," *United*

---

[4]We are cognizant the Supreme Court opined "the material support statute may not be clear in every application." *Holder* v *Humanitarian Law Project*, *supra*, 561 US at 21.

[5] "Detention Hearing Transcript" will hereafter be referred to as "DHT."

*States* v *Al-Arian*, 308 F Supp 2d 1322, 1339 (MD Fla 2004), *reh den*, 329 F Supp 2d 1294, 1300 (MD Fla 2004) (footnote omitted); *see also*, *Boim* v *Quranic Literacy Institute and Holy Land Foundation for Relief and Development*, 291 F 3d 1000, 1023-1024 (7th Cir 2002).

## C.

Mohammad's reference of visiting "a shrine" (R 9 DHT Pg ID 73) may be extrapolated to encompass the possibility of his demise[6] given its geographic location. Query how Mr Hamdan could surmise his *mere* discussion of the shrine—and his potential death—could be *reasonably* interpreted to violate 18 USC § 2339B, *see Holder* v *Humanitarian Law Project*, *supra*, 561 US at 23-24 (independent activity constitutes neither "material support" nor "personnel").

The "Due Process Clause of the Fifth Amendment" is violated when the pertinent statute " 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.' *United States* v *Williams*, 553 US 285, 304, 128 S Ct 1830, 170 L Ed 2d 650 (2008)." *Holder* v *Humanitarian Law Project*, *supra*, 561 US at 18.

-----

[6]*See* Exhibit "C" attached to Brief in Support of Motion for Revocation of Detention Order.

10

As applied to the cause at bar, the complained of accusation—with the requisite examination "of the facts of the case at hand," *Village of Hoffman Estates* v *Flipside, Hoffman Estates*, 455 US 489, 495 n 7,102 S Ct 1186, 71 L Ed 2d 362 (1982)—suffers from both unconstitutional vagueness and overbreath, *see, Holder* v *Humanitarian Law Project, supra*, 561 US at 18-20; *see also, United States* v *Awan*, 459 F Supp 2d 167, 174-176 (ED NY 2006).

Moreover, inasmuch as the present prosecution is predicated upon your Defendant's verbiage, our Constitution mandates the analysis be performed on the basis of how *he* intended *his* words to be construed, *see, e g, Elonis* v *United States*, —US—, 135 S Ct 2001, 2008-2011, 192 L Ed 2d 1 (2015); *United States* v *Houston*, 792 F 3d 663, 667 (6th Cir 2015).

Mr Hamdan's recognition Hizbollah "won't take me" (R 9 DHT Pg ID 73), as well as his adamancy of refusing to utilize "connections" (R 9 DHT Pg ID 73), clearly evidences *his* lack of intent to, within the meaning of 18 USC §§ 2339A (b), 2339B (a) (1), "provide material support and resources . . . to a foreign terrorist organization," *see generally, United States* v *Bailey*, —F 3d—, 2016 WL 1426295 * 3 (4th Cir 2016); *United States* v *Argueta-Rosales*, —F 3d—, 2016 WL 1425881 ** 4-6 (9th Cir 2016).

11

## D.

MOHAMMAD HASSAN HAMDAN acknowledges "[t]he material

support statute explicitly applies to overseas conduct, 18 USC § 2339B (d) (2)."

*United States* v *Naseer*, 38 F Supp 3d 269, 272 (ED NY 2014); *see also*, *United*

*States* v *Sidorenko*, 102 F Supp 3d 1124, 1127-1129 (ND Cal 2015). Mr Hamdan

does not dispute "Congress has the authority to enforce its laws beyond the

territorial boundaries of the United States." *United States* v *Yousef*, 327 F 3d 56,

86 (2d Cir 2003) (internal quotations omitted).

> [I]n order to apply extraterritorially a federal criminal statute to a
> defendant consistent with due process, there must be a sufficient nexus
> between the defendant and the United States so that such an application
> of a domestic statute to the alleged conduct would not be arbitrary or
> fundamentally unfair. *United States* v *Davis*, 905 F 2d 245, 248-49 (9th
> Cir 1990) (internal citation omitted). This requirement "ensures that a
> United States court will assert jurisdiction only over a defendant 'who
> should reasonably anticipate being haled into court' in this country."
> *United States* v *Klimavicius-Viloria*, 144 F 3d 1249, 1257 (9th Cir 1998)
> (quoting *World-Wide Volkswagen Corp* v *Woodson*, 444 US 286, 297,
> 100 S Ct 580, 62 L Ed 2d 490 (1980). *United States* v *Sidorenko, supra*,
> 102 F Supp 3d at 1132.

Query, therefore, consistent within this applicable due process rubric,

how could Mohammad know by wanting to visit a shrine in Syria (R 9 DHT Pg ID

73), he would be "haled into court in this country," *Id* at 1132-1134. "In addition

to the 'sufficient nexus' text, courts have also analyzed whether defendants had

12

'fair warning' that their extraterritorial conduct exposed them to prosecution."

*United States* v *Naseer*, *supra*, 38 F Supp 3d at 273 (citation omitted).

> Fair warning does not require that the defendants understand that they
> could be subject to criminal prosecution *in the United States* so long as
> they would reasonably understand that their conduct was criminal and
> would subject them to prosecution somewhere. *Id* at 273 (emphasis in
> original) (citation omitted).

The indictment does not allege, nor are we aware of, any applicable law

which would criminalize *somewhere* Mr Hamdan traveling to a shrine in Syria and

because of the hostilities in the region, being killed. Regardless of the *possibility*

of such an enactment, we would respectfully deem it *unreasonable* for him to

believe this endeavor could result in his prosecution.

As Magistrate Judge R Steven Whalen adroitly observed, your Defendant

stated the "Shiite Muslims in Syria . . . [were] not fighting America, they are not.

And I *don't see an indication that he seeks to do harm to the United States*" (R 10

DHT Pg ID 172) (emphasis added). Yet, in order for the requisite "jurisdictional

nexus" to exist, it is mandatory "the aim of the [complained of] activity is to cause

harm inside the United States," *United States* v *Sidorenko*, *supra*, 102 F Supp 3d at

1133 (citations omitted).

Therefore, the instant indictment is deficient, *Id* at 1133-1134.

E.

In defining the phrase "material support or resources," 18 USC § 2339A (b) (1) and the term "personnel," 18 USC § 2339B (h), Congress sought "narrow[] definitions" to satisfy the prerequisites of 18 USC § 2339B (a) (1), *see generally*, *Holder* v *Humanitarian Law Project*, *supra*, 561 US at 35-36. Significantly as to the latter term, the enactment specifically provides "[n]o person may be prosecuted under this section in connection with the term 'personnel' *unless* that person has *knowingly* . . . attempted to provide . . . to a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work *under* that terrorist organization's *direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization*." 18 USC § 2339B (h) (emphasis added).

Crucially, "[i]ndividuals who act entirely *independently* of the foreign terrorist organization to advance its goals or objectives *shall not be considered to be working under the foreign terrorist organization's direction and control*," *Id* (emphasis added); *see also*, *United States* v *Taleb-Jedi*, *supra*, 566 F Supp 2d at 164.

With due respect, there is simply no demonstration Mr Hamdan's anticipated trip to the Middle East could "be considered to be working under [Hizbollah's] direction and control." The government's desire to encompass your Defendant's purported travel plans into this statutory scheme should be rejected,

14

*see*, *e g*, *United States* v *Sattar*, 272 F Supp 2d 348, 357-358 (SD NY 2003),

inasmuch as his activity was "*entirely independent* of the foreign terrorist

organization . . . ," 18 USC § 2339B (h) (emphasis added).

## F.

In order to establish the *charged* offense of attempt, the government must

demonstrate the accused " '(a) had the *intent* to commit the object crime and (b)

engaged in conduct amounting to a *substantial step* towards its commission.'

*United States* v *Farhane*, 634 F 3d 127, 145 (2d Cir 2011)." *United States* v

*Anderson*, 747 F 3d 51, 73 (2d Cir 2014).

> [F]or a defendant to have taken a 'substantial step,' he must have engaged
> in more than 'mere preparation,' but may have stopped short of 'the last
> act necessary' for the actual commission of the substantive crime. *United
> States* v *Celaj*, 649 F 3d 162, 171 (2d Cir 2011) (quoting *United States* v
> *Yousef*, 327 F 3d 56, 134 (2d Cir 2003)). *Id* 73-74.

While we are cognizant "whether [the] particular conduct constitutes a

'substantial step' is 'so dependent on the particular facts of each case that, of

necessity, there can be no litmus test to guide the reviewing courts.'" *United*

*States* v *Ivic*, 700 F 2d 51, 66 (2d Cir 1983) (citation omitted). Nonetheless, it is

evident MOHAMMAD HASSAN HAMDAN never "manifest[ed] a firm

disposition to commit" the charged offense, *Id* at 66 and consequently never

effectuated the requisite *substantial step*, *see*, *e g*, *United States* v *Rosa*, 11 F 3d

315, 340 (2d Cir 1993); *United States* v *Delvecchio*, 816 F 2d 859, 862 (2d Cir
1984).

More specifically, Mohammad's attempt to board a plane in Detroit

destined for Europe cannot reasonably be extrapolated to constitute "a substantial

step towards the provision of material support . . . for an organization committed to

[actual terrorist] harm," *See United States* v *Farhane*, *supra*, 634 F 3d at 148; *see*

*also*, *Holder* v *Humanitarian Law Project*, *supra*, 561 US at 22-23, in Syria.

> [T]hat to punish as an attempt every act done to further a criminal
> purpose, no matter how remote from accomplishing harm, risks
> punishing individuals for their thoughts alone . . . . *United States* v
> *Crowley*, 318 F 3d 401, 408 (2d Cir 2003).

## G.

In light of the foregoing, we respectfully submit the instant indictment

should be dismissed, *see*, *United States* v *Yakou*, 428 F 3d 241, 243 (DC Cir 2005).

## RELIEF REQUESTED

WHEREFORE, the Defendant, MOHAMMAD HASSAN HAMDAN,

respectfully prays that this Honorable Court Dismiss the Indictment.

Respectfully submitted,

/s/Arthur Jay Weiss
ARTHUR JAY WEISS (P 25225)
Attorney for Defendant
30445 Northwestern Highway
Suite 225
Farmington Hills, Michigan 48334-3158
(248) 855-5888
arthurweiss@ajweisslaw.com

Dated: April 20 2016.

17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff

Honorable Gerald E Rosen

-vs-

MOHAMMAD HASSAN HAMDAN,                    Case No 14-cr-20232-GER-DRG

Defendant

_____/

## CERTIFICATE OF SERVICE

ARTHUR JAY WEISS, counsel of record for MOHAMMAD HASSAN

HAMDAN, the Defendant in the above-entitled matter, hereby Certifies that on the

20th day of April 2016, he served all counsel of record with a copy of Motion to

Dismiss Indictment, Brief in Support of Motion to Dismiss Indictment and

Certificate of Service relative to the above-entitled matter by electronic means.

/s/ Arthur Jay Weiss
ARTHUR JAY WEISS (P 25225)